IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE MORGAN, | No. C 14-1203 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION AND DENYING CERTIFICATE OF APPEALABILITY** |
| v. | |
| K. CHAPPELL, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner, a California prisoner incarcerated at San Quentin State Prison, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 challenging disciplinary findings that resulted in his loss of "good time" credits. Respondent was ordered to show cause why the petition should not be granted. Respondent filed a motion to dismiss on the grounds that the petition does not state a cognizable claim for federal habeas relief and that the claims are not exhausted. In his reply brief, respondent conceded that the petition had since been exhausted. The motion was denied, and respondent was ordered to file an answer. Respondent has filed an answer denying the petition, and petitioner has filed a traverse. For the reasons discussed below, the petition is **DENIED.**

## STATEMENT

Petitioner was sentenced in 1999 and is serving a term of twenty years in state prison. He was transferred to San Quentin on December 4, 2012. According to petitioner, when he arrived at San Quentin, he did not receive an orientation, a copy of prison rules and regulations, updates on changes to such rules, or any other explanation of the acts or activities that would

1  constitute misbehavior under such rules (Attachment to Pet. 2).

2  On May 13, 2013, a prison official found a cellphone and charger sitting on the top bunk of the cell that petitioner shared with another prisoner (Ans. Exh. 1). He was charged with violating prison rules against "dangerous property – possession of cell phone / paraphernalia" (*ibid.* (citing 15 Cal. Code Regs. 3006(a)). At the hearing, petitioner pled guilty, was found guilty, and was assessed ninety days of lost time credits (Ans. Exh. 1). He was also informed that time credits lost for breaking this rule can not be restored per 15 Cal. Code Regs. 3327(a)(4)(D) (*ibid.*).

The prison regulations governing possession of cellphones had been modified in 2012. As of January 1, 2012, cellphones were prohibited property, *see* 15 Cal. Code Regs. § 3006(c)(19), but they were not identified as "dangerous," *see id.* § 3006(a) (Ans. Exh. 9). The significance of this distinction is that time credits lost for possession of ordinary contraband can later be restored, but they cannot be restored when the inmate possesses the types of "dangerous" contraband listed in Section 3006(a), *see* 15 Cal. Code Regs. § 3327(a)(4)(D) (Pet. Opp. Mot. Dism. Exh. B). By January1, 2013, cellphones had been changed from ordinary contraband to one of the "dangerous" properties listed in Section 3006(a) (*ibid.*). Another change was that "constructive possession" was explicitly added to Section 3006(a) as prohibited (*ibid.*). These changes to the regulations were explained to petitioner at the disciplinary hearing (Attachment to Pet. 2-3; Ans. Exh. 1).

Petitioner filed administrative appeals of the disciplinary decision through the third (and highest) level of administrative review (Ans. Exh. 2 at 11-14). In his appeal, he complained that San Quentin officials did not explain the changes to prison regulations governing cellphones prior to the disciplinary hearing, citing Sections 2080 and 2930, which require prison officials to notify inmates of prison rules (*id.* 11-12). The appeal was denied at the second level (the first level of review was bypassed); the reviewer found was "highly unlikely" that petitioner did not know about this rule change because the change was implemented in all prisons in early 2012, prior to petitioner coming to San Quentin (*id.* 18). In his appeal to the third level of review, petitioner complained that he did not know that prison rules were changed to re-classify

2

cellphones as "dangerous" contraband because San Quentin officials failed to notify him of the change (*id.* 13-14). The third level review rejected the appeal on the grounds that there was sufficient evidence to find that petitioner was in constructive possession of the cellphone and charger, and he was afforded the required procedural protections (*id.* 15-16).

    Petitioner filed a habeas petition in the Marin County Superior Court claiming that his discipline for cellphone possession violated his right to due process (Ans. Exh. 2). He argued that the prison regulations requiring notice to inmates of prison rules (15 Cal. Code Regs. §§ 2080, 2930) created a liberty interest, that San Quentin officials violated this liberty interest by not giving him an orientation, advising him of prohibited behavior, or providing him with updated copy of the regulations, and that as a result he did not know that cellphones were re-classified as "dangerous" contraband under Section 3006(a) until he was disciplined (*id.* 3-4). The superior court found that it could not "seriously entertain a belief that petitioner did not know or understand that possession of a cell phone within the prison would be forbidden in that it might constitute a serious breach of security. He has produced no transcript of the hearing itself to support his contention (Ans. Exh. 3 at 2.)." His petition to the California Court of Appeal made the same arguments he made in the superior court, and the petition was summarily denied without citation (*id.* Exhs. 4, 5). Petitioner then filed a petition in the California Supreme Court, also making the same arguments; while the instant federal petition was pending, the California Supreme Court summarily denied the petition, citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), *In re Dexter*, 25 cal.3d 921, 925-26, *In re Swain*, 34 Cal.2d 300, 304 (1949) (*id.* Exhs. 6, 7).

    The instant petition makes the same arguments petitioner made in his state court petition. Specifically, he argues that he has a liberty interest protected by his federal right to due process in receiving notice of changes to prison rules (Pet. Attachment 3-4). He claims that San Quentin officials violated this interest by failing to inform him of the changes to Section 3006(a) reclassifying cellphones as "dangerous" contraband (*id.* 2-4). In both his traverse and in his opposition to respondent's motion to dismiss, petitioner presents a slightly different argument. There, he argues that his rights were violated by not being informed of the other change to

3

Section 3006(a), namely that "constructive possession" violates prison rules against possession of dangerous contraband (Pet. Opp. Mot. Dism. 1, 3-4; Pet. Decl. Supp. Mot. Dism. 1-2; Trav. 6-7). Although this argument is not in the petition, it is assumed that petitioner would add it by amendment if given leave to do so, and it is addressed below.

## ANALYSIS

### A. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively

4

unreasonable." *Id*. at 409.

B. **LEGAL CLAIMS**

    1.    <u>Mootness</u>

Mootness is not argued by the parties, but it is raised sua sponte because petitioner states in his petition that his scheduled release date was August 29, 2015 (Pet. 6). If he has been released from custody, then this petition is moot.

Article III, Section 2, of the Constitution requires the existence of a "case" or "controversy" through all stages of federal judicial proceedings. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

Here, petitioner asks for a restoration of his 90 days of lost good time credits. If he has been released from custody, then good time credits cannot be restored. The only other conceivable form of relief he could be provided based upon his claim is the expungement of the disciplinary finding. However, if his sentence has expired, then some concrete and continuing injury other than the now-ended incarceration period – some "collateral consequence" of the discipline – must exist if his petition is to be maintained and not considered moot. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (addressing mootness of federal habeas petitions challenging convictions or sentences). The presumption of collateral consequences that is applied to criminal convictions does not extend to prison disciplinary proceedings. *Wilson v. Terhune*, 319 F.3d 477, 481 (9th Cir. 2003). A prisoner seeking to challenge prison disciplinary proceedings in habeas must demonstrate that continuing collateral consequences exist if the punishment imposed as a result of the disciplinary action has expired. *Ibid*. Here, if not only the disciplinary punishment but also petitioner's entire sentence have expired and he is no longer in prison, it is difficult to conceive what collateral consequences would continue to exist from the disciplinary proceedings. There is no indication of any such consequences in the record. As a result, if petitioner has in fact been released from custody, the instant petition is moot.

It is possible that petitioner remains in prison. His release date could have been

1 postponed since he filed the instant petition in March 2014.  Moreover, although August 2014
2 has come and gone, neither party has indicated that petitioner has in fact been released from
3 custody, nor has petitioner filed a notice of change of address.  Accordingly, in the event that
4 petitioner remains in custody, his claims are addressed on their merits.

       2.    <u>Liberty interest</u>

Petitioner argues that Sections 2080 and 2930 of the prison regulations gave him a liberty interest protected by his federal right to due process in being notified of the 2012 changes to Section 3006(a), and that San Quentin officials violated this liberty interest.

Prison officials deprive an inmate of a procedurally protected liberty interest if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).  Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." *Id.* at 487.

Neither of the regulations cited by petitioner satisfy the first prong of *Sandin*.  Section 2930 only applies to prisoners sentenced before 1983 (Section 2930(a)) or who committed a felony before 1977 (Section 2930(b)).  Petitioner was convicted and sentenced in 1999.  As a result, Section 2930 does not apply to petitioner, let alone give him any kind of federally protected liberty interest.

Section 2080 provides: "A copy of the rules and regulations prescribing the duties and obligations of prisoners shall be furnished" to each state prisoner.  The 2012 changes to Section 3006(a) did not change the "duties and obligations of prisoners."  Inmates were prohibited from possessing cellphones both prior to and after 2012.  The changes merely made the punishment for such possession more severe — by re-classifying cellphones as "dangerous" contraband and making lost time credits unrecoverable — and made explicit a theory of liability — "constructive possession" — that was already prohibited by the 2012 version of Section 3006 (prohibiting inmates from having contraband "under their control").  Because the 2012 changes to Section

6

3006(a) did not prescribe any new "duties and obligations of prisoners," Section 2080 did not "narrowly restrict" prison officials to notifying inmates of such changes.

Secondly, Section 2080 does not specify how or when such changes must be provided to inmates, leaving that to the discretion of prison officials. As such, the regulation does not "narrowly restrict" prison officials, within the meaning of *Sandin*'s first prong, from using their discretion as to when and how to notify inmates of prison rule changes, including doing so at the inmate's disciplinary hearing, as occurred here. As a result, the first prong of *Sandin* was not met, and petitioner did not have a protected liberty interest in being informed of the 2012 changes to Section 3006(a).

In addition, failing to be notified of modifications to Section 3006(a) does not amount to a deprivation of "real substance" under *Sandin*'s second prong. The lack of such notice neither constitutes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," nor does it affect the duration of a sentence. *Compare Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (conditions which violate the Eighth Amendment constitute "atypical and significant hardship"); *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005) (assignment to "supermax" prison "real substance" under *Sandin*); *Brown*, 751 F.3d at 988 (finding 27-month confinement in disciplinary segregation without meaningful review imposed an atypical and significant hardship and therefore implicated a protected liberty interest, without considering state regulations).

Furthermore, even if petitioner had a liberty interest in being notified of the changes to Section 3006(a), the administrative record indicates that he was in fact informed of the changes prior to his arrival at San Quentin. Petitioner states in his administrative appeal that "every institution I've been to" prior to San Quentin "gave me an updated version of the rules" (Ans. Exh. 2 at 14). The changes to Section 3006(a) were made "very early" in 2012, before petitioner arrived at San Quentin in December 2012 (Ans. Exh. 2 at 14, 18). From this record, the state court could reasonably find that it was not credible that petitioner did not learn at his prison facility about the changes to Section 3006(a) that preceded his arrival at San Quentin. Under those circumstances, even if petitioner had a protected liberty interest in notice of the changes,

7

the state court reasonably rejected his claim that such an interest was violated.

### 3. Due Process Clause

Petitioner has also not shown that San Quentin officials violated his right to due process by failing to provide him with an updated version of the rules prior to disciplining him. Respondent argues that there is no "clearly established" federal law within the meaning of AEDPA requiring notice to inmates of prohibited conduct before they can be disciplined. Respondent's arguments were rejected in the order denying his motion to dismiss, in which it was noted that the Ninth Circuit has held that it is "clearly established by both common sense and by precedent that due process requires fair notice of what conduct is prohibited before as a sanction can be imposed." *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996). Respondent now argues that *Newell* is not controlling because circuit court decisions are not sufficient for habeas relief under AEDPA, and because *Newell* was not a habeas case analyzing AEDPA but rather a qualified immunity case. Respondent further argues that the precedent from the United States Supreme Court cited in *Newell* does not concern, and therefore does not clearly establish, a due process right to prior notice of prison rules. *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012); *see Newell*, 79 F.3d at 117; *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

These arguments by respondent need not be reached here because even if it is "clearly established" under AEDPA that due process requires prison officials to inform inmates of prison rules before punishing them, the state courts reasonably found that such a right was not violated. *See* 2254(d)(1) (federal habeas relief available if state courts unreasonably applied or contravened clearly established federal law). There is no dispute that petitioner knew that cellphones were prohibited in the prison. As discussed above, the changes to Section 3006(a) did not create a new kind of prohibited conduct, but rather simply changed the penalty for the already-prohibited conduct of possessing a cellphone in prison and made explicit a theory of liability for such an offense. There is no "clearly established" federal law cited by petitioner or of which this court is aware requiring advance notice to inmates whenever prison officials change the penalty or add a new theory of liability for conduct that has already been prohibited. As petitioner was already informed that possession or control of a cellphone was prohibited, the

state court's rejection of petitioner's claim that his right to due process was violated was neither contrary to nor an unreasonable application of federal law. He is therefore not entitled to habeas relief on this claim.

In light of this conclusion, respondent's alternative arguments based upon exhaustion and procedural default need not be reached.

## CONCLUSION

The petition is **DENIED**.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: November  20 , 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9